IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CANDY WESTPHAL,

            Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

            Defendant.

3:15-CV-01904-AC

FINDINGS AND
RECOMMENDATION

**ACOSTA, Magistrate Judge:**

    Plaintiff Candy Westphal ("Plaintiff") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") in which she denied Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

    Following a review of the record, the court finds the decision of the Commissioner is not

1- FINDINGS AND RECOMMENDATION

supported by substantial evidence in the record.

*Administrative History*

Plaintiff filed her applications on October 10, 2012, alleging a disability onset date of September 1, 2009, due to "severe depression with anxiety, fibromyalgia, high blood pressure, asthma, rheumatoid arthritis, hernias, irritable bowel syndrome, migraines, Bell's Palsy, twisted herniated intestine, [and] complications from gastric bypass." Tr. 245.[1]  The applications were denied initially and on reconsideration.  An Administrative Law Judge ("ALJ") held a hearing on December 1, 2014. Tr. 45-78.  At the hearing Plaintiff was represented by an attorney.  Plaintiff and a vocational expert ("VE") testified.

The ALJ issued a decision on May 20, 2015, in which he found Plaintiff was not disabled. Tr. 18-44.  That decision became the final decision of the Commissioner on August 26, 2015, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.

On October 8, 2015, Plaintiff filed a Complaint in this court seeking review of the Commissioner's decision.

*Background*

Plaintiff  was born in 1971 and was 43 years old at the hearing before the ALJ.  She completed the twelfth grade. Tr. 50.  Plaintiff has worked as a bartender, server, short order cook, receptionist, leasing agent/clerk, retail manager, and deli counter worker.  Tr. 37.

*Standards*

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674

---

[1]  Citations to the official transcript of record filed by the Commissioner on February 16, 2016, are referred to as "Tr."

2- FINDINGS AND RECOMMENDATION

F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

3- FINDINGS AND RECOMMENDATION

*Disability Evaluation*

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 ("Listed Impairments").

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*,

648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

*ALJ'S Findings*

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her September 1, 2009, alleged onset date. Tr. 23. Her date last insured is December 31, 2014. *Id.*

At Step Two the ALJ found Plaintiff has severe impairments of fibromyalgia, hypothyroid, chronic obstructive pulmonary disease, anemia, edema, migraines, and "mental conditions described as anxiety and depression." Tr. 24.

At Step Three the ALJ determined Plaintiff's impairments did not equal in severity a listed impairment, and found Plaintiff retained the RFC to perform sedentary work except she should never climb ladders, ropes or scaffolds; can occasionally stoop and balance and climb ramps and stairs; never kneel, crouch, or crawl; should avoid concentrated exposure to pulmonary irritants and hazards; is limited to simple, routine repetitive tasks consistent with unskilled work; can perform at a standard or ordinary pace, but not a strict production rate or pace; and is limited to occasional contact with the public and coworkers. Tr. 28.

5- FINDINGS AND RECOMMENDATION

At Step Four the ALJ found Plaintiff was unable to perform her past relevant work. Tr. 37. At Step Five, the ALJ found Plaintiff retained the ability to perform a reduced range of sedentary work, with representative occupations including document preparer and silver wrapper. The ALJ concluded that Plaintiff was not disabled between her onset date of September 1, 2009 and May 20, 2015. Tr. 39.

*The Medical Evidence and Testimony*

I.      The Medical Record.

The parties are familiar with the extensive medical record. It will be set out below when relevant.

II.     The January 3, 2013 Adult Function Report.

Plaintiff completed an Adult Function Report in January 2013. Tr. 261-70. She stated her conditions had worsened and were "unbearable at times." Tr. 261. Plaintiff lived with her mother and was unable "to complete the simplest tasks without my medications or assistance." *Id.* She described her daily activities as "just try[ing] to get from one time to the next while trying to control my physical pain." Tr. 262. She feeds and waters her cat, and her mother helps with the litter box.

Plaintiff stated she needs assistance with simple tasks such as cooking and sometimes with bathing. She wakes every two to three hours with pain, dressing takes longer than before, and she requires help to lift or move things to clean or reach items. Plaintiff loses track of time and writes herself notes to remind herself of things she needs to do. Her mother helps her remember to take her medications. Tr. 265.

She makes simple meals with canned foods, sandwiches, and microwavable items. She can no longer prepare whole meals from scratch. Plaintiff can no longer mow the lawn. She seldom

6- FINDINGS AND RECOMMENDATION

goes out doors because she tires easily and is frustrated by her limitations.  Tr. 266.  She rarely goes out alone for fear of panic attacks.  Plaintiff rarely drives due to anxiety attacks and the effects of her medications, and she shops for groceries a couple of times a month.  People do not want to go to the grocery store with her because it takes her two hours to shop, but she cannot go alone for fear of an anxiety attack.

Plaintiff avoids social situations as they cause anxiety and she becomes physically ill.  Tr. 268.  She is in constant pain and fearful of going almost anywhere or being around people.

Plaintiff used to craft and bead daily but no longer can because of pain and a tendency to drop things.  Tr. 267.  She rarely works on the computer.  She can walk a couple of blocks before she needs to rest for a few minutes.  She can pay attention "only for a short time before anxiety gets the best of me."  Tr. 268.  She takes notes when given oral instruction.  She does not handle stress or changes in routine well.  Sometimes she uses a motorized cart when shopping.

III.    *Testimony at December 1, 2014 Hearing.*

Plaintiff testified that she lived with her mother.  She completed the twelfth grade.  She last worked at Cabela's in 2009, but was terminated after four leaves of absence to try to get her medical conditions under control.  Tr. 50.  She has not worked or looked for work since she was terminated.

In January 2014 Plaintiff had severe edema and was taken by ambulance to a hospital near her home in Tennessee.  She has no recollection of the incident, but she was hospitalized for six days after which she was very weak and tired.  She was told she had been in a thyroid coma.  "I couldn't remember hardly anything.  Even basic things."  Tr. 51.  Her mother cared for her until she was well enough to move to Oregon in June 2014 where she has other family.  Plaintiff went to urgent care to have her thyroid checked because there is "something very wrong with that.  And they didn't —

were not able to figure out what yet.  And that's still not controlled." Tr. 51-52.

Plaintiff is on thyroid medication and she has her thyroid checked every six to eight weeks. Tr. 52.  Her doctors have not been able to stabilize her thyroid levels, and they don't know why. Each time her thyroid is tested doctors have increased the dose of medication. Tr. 53.  She sees a blood doctor who "is trying to figure out why I've had the anemia for a number of years, and why I have no vitamins, no minerals left in my body, and it gets depleted the way it does, and the edema." *Id.*  Plaintiff has had a blood transfusion.  As a result of her thyroid problems her hair falls out and her scalp itches, she is tired and weak and has trouble remembering things.

Her other conditions include pain management due to fibromyalgia, stomach issues, migraine headaches, depression and anxiety. Tr. 54.  Plaintiff has decreased her pain medication slightly.  The medication does not ever eliminate her pain but allows her "to be able to semi function." *Id.*

Plaintiff was not seeing a counselor.  She saw several counselors years ago.  Her doctors have suggested she see a counselor but she has not because she "get[s] very overwhelmed fairly quickly, and if there's too much going on or too many appointments, I really have a hard time.  And I know the commitment there is with a counselor, and it's just very hard starting basically from scratch with a new one." Tr. 55.

Westphal and her mother moved from Oregon to Tennessee in 2009 for a warmer climate. She has trouble breathing at times but does "fairly well" with her inhaler and Spiriva.  Tr. 56. Plaintiff has problems with her stomach for which she takes ulcer medications and modifies her eating habits.  She spends a lot of time with her cat, reads, and tries to help with chores like cooking, cleaning and laundry, but she becomes overwhelmed.

In July 2014 Plaintiff's mother was certified by the State of Oregon as Plaintiff's care giver

8- FINDINGS AND RECOMMENDATION

for which she is paid for 92 hours a month.  Tr. 58-59, 420.  Plaintiff does not go out alone "because I do get confused now, I am honestly too afraid to go by myself, because what seems like ten minutes to me can be two hours for somebody else."  Tr. 60.  Plaintiff has a driver's license.

When she last worked Plaintiff took medical leave primarily because of fibromyalgia and anxiety.  Tr. 61.  At that time she took basic pain medication, Tylenol, and a Fentanyl patch for pain.  She takes Hydrocodone for break through pain about four times a day.  Her medications do not eliminate the pain but allow her to "function on most days in a limited capacity."  Tr. 61-62.

Plaintiff has had migraines since she was a teenager.  She has at least two a week, and they last four to five hours if she catches them early and takes Imitrex, although sometimes they last a whole day even with the medication.  When she has a headache Plaintiff cannot read a newspaper, watch television, or leave the house, and she lies down all day.  Tr. 63.  She take about 18 Imitrex each month.  Plaintiff is easily confused and has to write down her medications and the dosing schedule.  She can get very confused at the grocery store trying to determine the best value, and sometimes has to leave the store.  She has trouble remembering what she reads, dates, times, and names.  Tr. 64.

*Discussion*

Plaintiff contends the ALJ erred by  (1) finding Plaintiff less than fully credible; and (2) failing to credit the opinions of the examining physician.  In addition, Plaintiff contends the Appeals Council improperly rejected the testimony of her mental health counselor.

I.      Credibility.

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms.

9- FINDINGS AND RECOMMENDATION

*Vasquez,* 572 F.3d at 591. First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen,* 80 F.3d at 1282.

Second, "if the claimant meets the first test, and there is no evidence of malingering, " ' the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.' " *Lingenfelter,* 504 F.3d at 1036 (quoting *Smolen,* 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995)(citing *Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991)(*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen,* 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than

treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Smolen,* 80 F.3d at 1284.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely credible. Tr. 29. The ALJ noted that although Plaintiff alleged disability beginning in September 2009 there is no medical evidence of treatment between June 2009 and June 2011. Tr. 29-30. Chris Maynard, M.D., stated that he began treating Plaintiff in December 2010, but there are no medical records in the administrative record before June 2011. Tr. 403, 546. A claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96–7p. Assuming that Dr. Maynard began treating Plaintiff in December 2010, there is no evidence of medical treatment from the alleged onset date in September 2009 until December 2010, a period of over a year. Plaintiff's failure to obtain treatment is a clear and convincing reason to find her less than fully credible.

The ALJ stated that the objective medical evidence indicated that Plaintiff's symptoms are less limiting than she alleges. Tr. 29. When the ALJ reasonably relies on multiple reasons to discount a claimant's symptom testimony, one permissible reason is the absence of objective medical evidence. *Burch v. Barnhart,* 400 F.3d 676, 691 (9th Cir. 2005). Plaintiff testified that she has chronic severe pain due to fibromyalgia. Tr. 54. The ALJ noted that Plaintiff's fibromyalgia

diagnosis is not documented by the requisite number of positive tender points. Tr. 30, 379, 630. The ALJ pointed to the evidence of Plaintiff's ability to transfer onto and off of examination tables (Tr. 30, 629), her intact strength (Tr. 30, 352, 364, 379, 471, 634), her full range of motion (Tr. 30, 471, 487, 630), and the absence of joint abnormalities (Tr. 30, 491) in determining that the evidence does not support the severity of her complaints. The lack of objective evidence is a specific, clear and convincing reason for the ALJ to find Plaintiff less than fully credible.

The ALJ stated that Plaintiff was treated with high doses of strong narcotics for her pain, although treating physician John Ramsey, M.D., noted in August 2014 that he did not treat fibromyalgia and anxiety with narcotics and benzodiazepines, and would taper Plaintiff off those medications. Tr. 31, 487. The type and dosage of medication a claimant takes is relevant to evaluation of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). The fact that treating physicians had different opinions regarding prescriptions is not a specific, clear or convincing reason to find Plaintiff less credible.

The ALJ found that, despite Plaintiff's complaints of debilitating fatigue, most healthcare providers noted Plaintiff was not in distress and did not appear tired or fatigued. Tr. 30, 352, 354, 363, 367, 369, 394, 396. In March 2013 Kimberly Borris, PA-C, noted Plaintiff was "frail appearing." Tr. 392. One year later Dr. Maynard noted Plaintiff was "weak." Tr. 585. In November 2014 Christie J. Moore, D.O., noted Plaintiff was "chronically ill appearing." Tr. 464. The same month Christine D. Gray, M.D. stated Plaintiff "appears far older than stated age" while treating her for an acute sinus infection. Tr. 459. The ALJ noted these observations and adequately accounted for them by limiting Plaintiff to sedentary work. Tr. 30.

The ALJ cited Plaintiff's March 2015 assertion to examining physician Tatsuro Ogisu, M.D.,

that she can sit for ten minutes to one hour at worst, and for two to three hours at best. Tr. 29, 628. Plaintiff told Dr. Ogisu she could stand for five minutes up to one hour. *Id.* After examination, Dr. Ogisu concluded Plaintiff was able to sit for two hours at a time without interruption, stand for one hour at a time without interruption, and walk for 20 minutes at a time. Tr. 622. Dr. Ogisu found Plaintiff could sit for seven hours in an eight-hour workday, stand for six hours in an eight-hour workday, and walk for five hours in an eight-hour workday. *Id.* Dr. Ogisu stated Plaintiff did not need an assistive device except on rough, uneven, or sloped surfaces. The ALJ's determination that Plaintiff was less than fully credible as to her ability to sit, stand, and walk is a specific, clear and convincing reason to find her less than fully credible.

The ALJ cited evidence of intermittent significant edema, resolved in October and November 2014. Tr. 31, 459, 464. The edema returned by Dr. Ogisu's March 2015 examination, and the doctor assessed limitations less restrictive than those in Plaintiff's RFC. Tr. 35, 622. Plaintiff points to no limitations arising from edema inconsistent with the RFC.

Plaintiff testified she has headaches at least twice a week, lasting between four and five hours if she takes medication early. Tr. 62. The headaches last a whole day or more if she misses the warning signs or wakes up with the headache. The ALJ noted Plaintiff has rarely, if ever, reported that her medication for headaches was not effective. Tr. 32. The ALJ reasonably determined that Plaintiff's lack of treatment for headaches undermine her credibility.

The ALJ noted Plaintiff's work history, which showed sporadic and limited work prior to the disability onset date. Tr. 35, 236. A poor work history before the alleged onset date is a valid credibility factor. *Marsh v. Colvin,* 792 F.3d 1170, 1174 (9th Cir. 2015).

On this record, the ALJ's credibility determination is supported by specific, clear and

convincing reasons and should be affirmed.

II.  Opinion of the Treating Physician.

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066. The opinion of an nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark,* 454 F.3d at 1066 n.2. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Dr. Maynard began treating Plaintiff in December 2010. On April 24, 2013, Dr. Maynard hand wrote a letter "To Whom it May Concern" in which he stated it was his opinion that Westphal was unable to work "due to multiple chronic medical problems and this will continue for the remainder of her life." Tr. 399. Dr. Maynard listed Plaintiff's ongoing problems as major

14- FINDINGS AND RECOMMENDATION

anxiety/depression, chronic abdominal pain due to adhesions, fibromyalgia, migraine headaches, symptoms resulting from gastric bypass, history of bowel obstruction, incisional hernias, restless leg syndrome, irritable bowel syndrome, esophagitis, COPD, and tobacco abuse.

In October 2013 Dr. Maynard completed a "Multiple Impairment Questionnaire" in which he listed Plaintiff's diagnoses as fibromyalgia, depression with uncontrollable crying, COPD, migraine headaches, and chronic pain syndrome. Tr. 403, 408. Her prognosis was poor. Dr. Maynard said Plaintiff had daily pain everywhere and fatigue of moderate severity. Tr. 405. He estimated Westphal could sit, stand, or walk for up to one hour in an eight hour workday, and must get up and move around hourly. Dr. Maynard said Plaintiff would have significant limitations in repetitive reaching, handling, or fingering because of poor coordination and concentration. Tr. 406. Dr. Maynard stated Plaintiff was unable to maintain a full time competitive job, and her experience of pain constantly interfered with her ability to pay attention and concentrate. Tr. 408. Plaintiff was not capable of tolerating even low stress. Dr. Maynard opined Plaintiff's limitations had existed prior to his first examination of Plaintiff in December 2010. Tr. 409.

Dr. Maynard signed an undated letter "To Whom it May Concern" in which he states "It is my opinion [Plaintiff] cannot now nor will she be able in the future to be employed and should receive disability benefits." Tr. 412. Dr. Maynard lists "hypothyroidism with myxedema; malnourished state post gastric bypass, fibromyalgia, chronic abdominal pain likely due to adhesions, tobacco abuse and COPD, migraine headaches, and restless leg syndrome." *Id.*

The ALJ gave Dr. Maynard's opinion "little weight." Tr. 36. The ALJ rejected the two letters as offering a conclusion on an issue reserved to the Commissioner. The ALJ gave no weight to Dr. Maynard's opinion that Westphal was "unable to work," because the issue of disability is

15- FINDINGS AND RECOMMENDATION

reserved to the Commissioner. Tr. 36.  However, a physician's assessment regarding the ability to

sustain employment, based on objective medical evidence, must be considered by the ALJ. *Hill v.*

*Astrue,* 698 F.3d 1153, 1160 (9th Cir. 2012).  The fact that the ultimate issue of disability is reserved

to the Commissioner is an accurate statement of the law, but it is not a clear and convincing, or

specific and legitimate, reason to reject a treating physician's opinion.

The ALJ stated that "Dr. Maynard appears to have relied heavily on the claimant's subjective

allegations [which are] not persuasive." Tr. 36.  An ALJ does not provide clear and convincing

reasons for rejecting a treating physician's opinion by questioning the credibility of the patient's

complaints where the doctor does not discredit those complaints and supports his ultimate opinion

with his own observations. *Edlund v. Massanari,* 253 F.3d 1152, 1159 (9th Cir. 2001); *Ryan v.*

*Comm'r of Soc. Sec.,* 528 F.3d 1194, 1199 (9th Cir. 2008).  Dr. Maynard clearly relied upon his own

observations to reach his opinion.  Therefore, the ALJ erred by rejecting Dr. Maynard's opinion

based on Plaintiff's lack of credibility.

The ALJ rejected Dr. Maynard's assessed functional limitations as inconsistent with other

evidence in the record and unsupported by Dr. Maynard's own treatment notes. *Id.*  Dr. Maynard

saw Westphal in June 2011 for abdominal pain. Tr. 375.  She was taking alprazolam, albuterol,

buspar, clonazepam, cymbalta, lasix, levothyroxine, lisinopril, norvasc, oxycodone, prozac, requip,

and trazodone.  Dr. Maynard diagnosed intestinal or peritoneal adhesions with obstruction

(postoperative, post infection), anxiety, depression, myalgia and myositis unspecified, and

fibromyalgia. The following month Dr. Maynard noted "no acute pain or distress tearful at times,"

and diagnosed myalgia and myositis unspecified, depression, and abdominal pain "probably

aggravated by narcotic tolerance and psych issues" and referred her for a psychological referral and

iron testing. Tr. 373. In August 2011 Plaintiff reported increased pain uncontrolled by medication. Tr. 371. On August 23, 2011, Dr. Maynard noted increased wheeze and fatigue and diagnosed acute bronchitis and COPD. Tr. 369. He increased Plaintiff's duragesic pain patch from 50 milligrams to 75.

In mid-September 2011 Plaintiff reported better pain control but wearing off by the third day. Tr. 367. Dr. Maynard increased the dose of her duragesic patch to 100 milligrams, and diagnosed chronic abdominal pain and intestinal or peritoneal adhesions with obstruction and myalgia and myositis. The following month Plaintiff reported she could not afford the 100 milligram patch and Dr. Maynard prescribed the 75 milligram patch and prescribed acetaminophen-hydrocodone. Tr. 365.

On November 17, 2011, Dr. Maynard noted symptoms of Bell's Palsey, including facial weakness and numbness. Plaintiff reported weakness and decreased grip in her left hand and all over soreness and weakness. Tr. 363. Dr. Maynard diagnosed Bell's Palsey, fibromyalgia, COPD, depression/anxiety-dysthymia, and referred her to neurology. Tr. 364.

In January 2012 Plaintiff reported she had stopping taking multiple medications, and Dr. Maynard noted she was "more alert and clear of speech." Tr. 361. He discontinued clonazepam.

The following month Plaintiff reported pain recurring on the third day of the pain patch, and that she had felt foggy on day one and two. Tr. 359. Dr. Maynard reduced the patch to 75 milligrams.

In March 2012 Dr. Maynard noted Plaintiff was "overall better but took xanax early and now out." Tr. 357. He prescribed Fioricet and discontinued Esgic.

In May 2012 Dr. Maynard presecribed flexeril and a 75 milligram duragesic patch every 48

17- FINDINGS AND RECOMMENDATION

hours for fibromyalgia, gastric bypass, abdominal hernia, chronic abdominal pain due to adhesions, COPD, and migraines. Tr. 354. On July 5 Plaintiff reported a migraine for the past week with increased fibromyalgia pain and depression. Tr. 352. By September 2012 Plaintiff reported increased fibromyalgia pain, and Dr. Maynard prescribed Vitamin B12 and Lorcet, noting Plaintiff was "not tearful today." Tr. 350. In November 2012 Plaintiff had "increased anxiety and tearfulness, confusion with cymbalta and taking more than prescribed," and Dr. Maynard prescribed Fioricet and Zoloft. Tr. 348. In December 2012 Dr. Maynard noted Plaintiff was "alert and less tearful." Tr. 346.

On January 29, 2013, Plaintiff was examined by Robert A. Blaine, M.D. Tr. 377-80. Dr. Blaine noted 3+ pitting edema of the left lower extremity from the knee to the foot, and 1+ pitting edema on the right lower extremity. Tr. 378-79. Strength in both upper and lower extremities was 5/5. Plaintiff's gait was antalgic and stiff, but heel and toe walk were normal. She was tender in 8 of 18 fibromyalgia points.

Dr. Blaine concluded Plaintiff could walk or stand for two hours in an eight hour day, carry up to 20 pounds infrequently, and sit for eight hours. Tr. 379. He concluded it should "be noted that the claimant was extremely anxious when she presented for her examination . . . ." *Id.*

The following week Ann M. Ramsey, M.S., conducted a psychological evaluation of Plaintiff with which Jeffrey W. Erickson, Ph.D., concurred. Tr. 381-87. Ms. Ramsey had no medical records to review. Ms. Ramsey noted it was "difficult sometimes to understand [Plaintiff] through the tearfulness and the high pitched wine in her voice. The examiner asked her at times to calm down and speak clearly." Tr. 385.

Ms. Ramsey diagnosed major depression, recurrent, moderate-to-severe without psychotic

features, anxiety disorder, NOS rule out panic disorder NOS, and alcohol dependence in full remission by report, and assessed a GAF of 55-60. Tr. 386. Performance on mental status examination indicated mild-to-moderate problems with recall, as well as on remote, and immediate events or dates. She had a mild degree of "inefficiency and concentration." *Id.* "Concentration on simplistic tasks appears to be minimally-to-mildly restricted and moderately restricted on complex tasks. Interaction with coworkers and supervisors was moderately restricted. Problem solving skills were mildly restricted. Tr. 387.

On February 15, 2013, Dr. Maynard noted Plaintiff was "doing better less tearful," with chronic edema left greater than right. Tr. 394. In March 2013 Plaintiff requested Lyrica "or something to help her all over pain. Her legs are sore and she is unable to sleep at night. She becomes tearful when we talk about medications." Tr. 392. She was "frail appearing" and "frequently closes eyes." *Id.* Gabapentin was prescribed. In April 2013 Dr. Maynard noted continuing pain although neurontin was helping her leg symptoms. Tr. 593. He diagnosed gastric bypass with dumping syndrome, and two weeks later wrote the April 24, 2013 letter stating Plaintiff was unable to work. Tr. 399.

In June 2013 Dr. Maynard noted neurontin seems to help with pain and depression symptoms, and stated her "mood seems slightly more stable." Tr. 591. Plaintiff had increasing left upper abdominal pain relieved several days later with a bloody bowel movement and pain relief. He diagnosed gastric bypass with dumping syndrome. Four months later Dr. Maynard noticed increased stress with decreased concentration, and crying. Plaintiff stopped Cymbalta due to cost and the belief that it was not working. Tr. 589. Her affect was slowed. Tr. 590. Two days later Dr. Maynard completed the Multiple Impairment Questionnaire in which he assessed multiple marked

functional impairments. Tr. 403-10.

In November 2013 Plaintiff had an allergic reaction to doxycycline with increased periorbital edema and edema in her legs. Tr. 588-89. She was prescribed Lasix. In February 2014 Dr. Maynard saw Plaintiff in follow-up after hospitalization for malnourishment and low protein. Tr. 587. Plaintiff was weak and her mother was controlling her medications and diet, and Dr. Maynard described her as a "weak cachectic individual [with] atrophied muscle mass." *Id.* She was told to drink four to five cans of Ensure per day. Tr. 588. The following month Dr. Maynard noted Plaintiff was trying to eat but had a two hour transit time to diarrhea. Tr. 585. She was still weak with "severe chronic swelling [lower extremities] now worse," and Dr. Maynard described her as a "cachectic female." *Id.* Two weeks later Plaintiff's swelling was "no better" but she was tolerating thyroid replacement. Tr. 584. Dr. Maynard noted she was "emotional but alert." *Id.* She had severe weeping edema of myxedema. Her synthroid was increased to 100 milligrams.

In April 2014 Plaintiff's thyroid was again low, with increased edema and leg pain. Tr. 582. She gained 22 pounds in one month. On May 1 Plaintiff still had "great pain in legs" and weeping edema. Tr. 581. In June 2014 Plaintiff moved to Oregon, and one month later she was seen in the emergency room for fatigue and thyroid disease. Tr. 564-67.

Dr. Maynard's opinion as to Plaintiff's physical and mental limitations is supported by his treatment notes. The Commissioner argues that Dr. Maynard's opinion is inconsistent with the physical limitations assessed by examining physicians Robert Blaine, M.D., and Tatsuro Ogisu, M.D. Dr. Blaine's January 2013 examination is set-out above. Dr. Ogisu examined Plaintiff in March 2015 and concluded Plaintiff could sit for seven-out-of-eight hours and stand for six-of-eight hours. Tr. 621-26. However, neither Dr. Blaine nor Dr. Ogisu evaluated Plaintiff's mental health or

capacity to sustain work. In addition, Dr. Maynard's opinion is fully corroborated by the treating mental health specialist, as set out below.

III.    New Evidence to the Appeals Council.

Plaintiff submitted additional medical evidence to the Appeals Council after the ALJ's decision. Tr. 636-43. The Appeals Council considered the additional evidence, but found the information did not provide a basis for changing the ALJ's decision. Tr. 2. The court considers this evidence because it is part of the administrative record even if not part of the record before the ALJ. *Brewes*, 682 F.3d at 1163, citing *Lingenfelter*, 504 F.3d at 1030 n.2 (9th Cir. 2007)(when Appeals Council considers new evidence in denying a claimant's request for review, the reviewing court considers both the ALJ's decision and the additional evidence submitted to the Council).

Plaintiff contends the Appeals Council was required to explain why it rejected the additional evidence, citing *Schneider v. Comm'r Soc. Sec. Admin.*, 223 F.3d 968, 975 (9th Cir. 2000). The *Schneider* court, however, found that the ALJ erred at step three when he failed to consider five letters the claimant's friends and former employers had submitted in making the Part B determination as to whether claimant's mental impairments satisfied severity requirements. *Schneider*, 223 F.3d at 975. The Commissioner correctly cites *Leir v. Colvin*, No. 12-35545, 2013 WL 5879443 (9th Cir. Nov. 4, 2013)(citing *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231-32 (9th Cir. 2011) for the proposition that the Appeals Council does not need to make any evidentiary findings about the new evidence.

The new evidence submitted to the Appeals Council consists of a five page Mental Impairment Questionnaire completed on May 15, 2015, by Paula Casner, MS, CADC III. Tr. 639-43. Ms. Casner is Plaintiff's case manager with the State of Oregon Department of Human

21- FINDINGS AND RECOMMENDATION

Resources, Aging and People with Disabilities. Ms. Casner has seen Plaintiff every two months since July 2014. Ms. Casner diagnosed Major Depressive Disorder secondary to severe arthritis and intractable pain, Bell's Palsy, and hypothyroidism corrected to only 50% of function with medication. Tr. 639. Ms. Casner noted Plaintiff's reports of back pain, migraines, and inability to access health care services, and assessed a GAF of 50. Plaintiff was despairing, hopeless, overwhelmed by pain, and dependant on others to manage. Ms. Casner opined that Plaintiff was not a malingerer. As signs and symptoms supporting her opinion, Ms. Casner endorsed depressed mood, persistent or generalized anxiety, abnormal affect either constricted or labile, feelings of guilt or worthlessness, tearful frequently with every interaction, anhedonia and or pervasive loss of interests, appetite disturbances, decreased energy because of pain, slowed speech, social withdrawal or isolation because of pain, difficulty thinking or concentrating because of pain, distractability, poor memory (immediate and recent), and sleep disturbance with resulting fatigue. Tr. 640. Ms. Casner stated Plaintiff would experience episodes of decompensation in a work or work-like setting causing an exacerbation of symptoms. Tr. 641. Ms. Casner checked boxes indicating Plaintiff would be markedly impaired in 20 out of 23 mental limitations, including the ability to carry out simple, one-to-two step instructions and to perform activities within a schedule and consistently be punctual. Tr. 642. Ms. Casner found Plaintiff would likely be absent more than three times per month, and opined that Plaintiff's limitations existed since at least April 1, 2009. Tr. 643.

<em>Remand</em>

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for

an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir. 2003)(en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ's rejection of the opinion of the treating physician should be found erroneous for the reasons set-out above. Accordingly, this matter should be remanded for the calculation and award of benefits.

*Scheduling*

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate

23- FINDINGS AND RECOMMENDATION

Procedure, should not be filed until entry of the district court's judgment or appealable order.  The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court.  Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 27th day of December, 2016.

John V. Acosta
United States Magistrate Judge